UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


BIZCAPITAL BUSINESS &                      CIVIL ACTION
INDUSTRIAL DEVELOPMENT CORP.


VERSUS                                     NO: 05-1967


OFFICE OF THE COMPTROLLER OF               SECTION: "J" (2)
THE CURRENCY OF THE UNITED
STATES

**ORDER AND REASONS**

Before the Court are defendant's **Motion To Dismiss Or, In The Alternative, For Summary Judgment** (Rec. Doc. 9) and plaintiff's **Cross-Motion For Summary Judgment** (Rec. Doc. 13). The Court also has before it Statements of Interest of the United States (Rec. Docs. 10 and 17). Having considered the motions and legal memoranda, the record, the oral arguments of the parties, and the law, the Court finds that defendant's **Motion To Dismiss Or, In The Alternative, For Summary Judgment** (Rec. Doc. 9) should be DENIED and plaintiff's **Cross-Motion For Summary Judgment** (Rec. Doc. 13) should be GRANTED.

1

**BACKGROUND**

The facts in this case are not in dispute. By letter dated March 29, 2005, plaintiff submitted a request to the OCC seeking the release of non-public OCC information pursuant to the OCC's regulations governing public access to such information. 12 C.F.R. §§ 4.31-4.40. *See* Pl.'s MSJ Ex. A. Plaintiff requested access to any Suspicious Activity Report (SAR) filed by Union Planters National Bank between late 1999 and early 2000 concerning a customer, Telformation, Inc. d/b/a/ Media Direct ("Media Direct"), and its principal Raymond Reggie. *Id.*

In its administrative request, plaintiff explained that it had brought a civil action for damages in state court and the SAR, if it existed, was critically important evidence that would prevent a miscarriage of justice in its lawsuit. *Id.* Plaintiff alleged that the bank misled plaintiff and another bank, Hibernia National Bank, into funding substantial loans for Media Direct. *Id.* The proceeds of the loans were allegedly used to pay a debt that Media Direct owed to the bank, which ultimately resulted in a loss to both plaintiff and Hibernia. *Id.* According to plaintiff, at the time the bank allegedly misled plaintiff and Hibernia into funding loans for Media Direct, the bank knew or suspected that Media Direct was engaged in a check-kiting scheme

2

in its account with the bank. *Id.*

Plaintiff's letter fulfilled the technical requirements and offered the showings required by the OCC's regulations regarding requests for non-public OCC information, 12 C.F.R. § 4.33. *Id.* On April 22, 2005, the OCC denied plaintiff's administrative request in a letter ("OCC denial letter") that referenced OCC regulations, the Bank Secrecy Act, case law, and OCC Interpretive Letter No. 98. *See* Pl.'s MSJ Ex. B.

On May 27, 2005, plaintiff filed this action seeking review of the OCC's decision under the Administrative Procedure Act, 5 U.S.C. § 704. The only issue before the court is the legal issue of whether the OCC's denial of plaintiff's request for a SAR was arbitrary and capricious, an abuse of discretion, or otherwise nit in accordance with the law.

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where both parties agree as to the material facts, disposition by

summary judgment is clearly warranted. *See Geosouthern Energy Corp. v. Chesapeake Operating, Inc.*, 274 F.3d 1017, 1020 (5th Cir. 2001) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).

**B. Administrative Procedure Act**

Judicial review of an agency decision is authorized under the Federal Administrative Procedure Act ("APA"). 5 U.S.C. § 706. Under section 706, the court decides questions of law with respect to agency action. *Id.* Agency actions, findings and conclusions shall be set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law. *Id.* The standard of review under the APA is narrow.

> A rule is 'arbitrary and capricious' only where the agency has considered impermissible factors, failed to consider important aspects of the problem, offered an explanation for its decision that is contrary to the record evidence, or is so irrational that it could not be attributed to a difference in opinion or the result of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Thus, agency decisions will be upheld so long as the agency 'examine[s] the relevant data and articulate[s] a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."' *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)." Review under the APA is limited to the administrative record. 5 U.S.C. § 706(2).

*BCCA Appeal Group v. E.P.A.*, 355 F.3d 817, 824 (5th Cir. 2003).

**DISCUSSION**

**A. The Bank Secrecy Act and the OCC's Implementing  Regulations**

Under the Bank Secrecy Act, the Secretary of the Treasury has the power to require banks and other financial institutions to report suspicious transactions to the appropriate authorities. 31 U.S.C. § 5318(g)(1).  Regarding the disclosure of SARs the Act provides as follows:

> (2)(A)(i) the financial institution ... may not notify any person involved in the transaction that the transaction has been reported; and
> (ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee.

31 U.S.C. § 5318(g)(2)(A).

The OCC, as the Bureau of the Treasury Department with primary supervisory responsibility over national banks, *see* 12 U.S.C. §§ 1, *et seq.*, has promulgated the following regulation implementing the statute's non-disclosure provisions:

> (k) Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law (e.g., 31 U.S.C. 5318(g)), or both, and shall notify the OCC.

5

12 C.F.R. § 21.11(k).[1]

In order to balance the interest in confidentiality embodied
by the privilege and private litigants' legitimate needs for non-
public documents, the OCC has promulgated regulations governing
the means by which private litigants may obtain OCC materials.
*See* 12 C.F.R. § 4.31 *et seq.* In *United States ex rel. Touhy v.
Ragen,* 340 U.S. 462, 468 (1951), the Supreme Court held that
agency regulations restricting disclosure of information in legal
proceedings fall within agency authority under the so-called
"housekeeping statute," 5 U.S.C. § 301. Under the OCC's *Touhy*
provisions, a SAR is specifically designated as non-public OCC
information. 12 C.F.R. § 4.32(b)(vii). The OCC's regulations
require that a party seeking non-public documents submit a
request to the Director of the OCC's Litigation Division in
Washington, D.C. 12 C.F.R. § 4.34(a). The request must include
information sufficient to inform the OCC of the nature of the
litigation. 12 C.F.R. § 4.33(a)(3)(ii). The requestor must make a
showing that "the information is relevant to the purpose for

---

[1] The regulations of the Federal Reserve Board, 12 C.F.R. §
208.62(j), the Financial Crimes Enforcement Network, 31 C.F.R. §
103.18(e), and the Office of Thrift Supervision, 12 C.F.R. §
563.180(d)(12), are essentially identical. Cases referring to
these provisions will be treated as pertinent to the OCC's
regulation.

which it is sought," that "other evidence reasonably suited to

the requestor's needs is not available from any other source,"

and that "the need for the information outweighs the public

interest considerations in maintaining the confidentiality of the

OCC information and outweighs the burden on the OCC to produce

the information." 12 C.F.R. § 4.33(a)(3)(iii). The OCC has sole

discretion to deny a request for non-public information "based on

its weighing of all appropriate factors including the requestor's

fulfilling of the requirements enumerated in § 4.33". 12 C.F.R.

§ 4.35(a)(1). The OCC's decision is a final agency action which

exhausts administrative remedies for discovery of the

information. *Id.* The OCC may deny a request for reasons that

include the following:

> (i) The requester was unsuccessful in showing that the
> information is relevant to the pending matter;
> (ii) The requester seeks testimony and the requestor
> did not show a compelling need for the information;
> (iii) The request arises from an adversarial matter and
> other evidence reasonably suited to the requestor's
> need is available from another source;
> (iv) A lawsuit or administrative action has not yet
> been filed and the request was made in connection with
> potential litigation; or
> (v) The production of the information would be contrary
> to the public interest or unduly burdensome to the OCC.

**B. The Parties' Arguments**

Plaintiff argues that the OCC's denial was arbitrary and

capricious because it failed to consider the appropriate

regulatory factors, as they pertain to plaintiff's request.
Plaintiff contends that its request fulfilled all the regulatory
requirements for requesting a SAR, including a showing of the
relevance, the unavailability of alternative sources of evidence,
the need as compared to the public interest in SAR
confidentiality, the inapplicability of policy concerns, and the
minimal burden of production on the OCC. *See* 12 C.F.R. § 4.33. In
response, plaintiff received a one-page denial letter which cited
the statute and regulations regarding the confidentiality of
SARs, numerous cases in which courts "have refused to order the
production of a SAR in discovery," and an OCC Interpretive Letter
explaining the confidentiality of SARs. Pl.'s MSJ Ex. B.

The OCC argues that this letter was sufficient because there
is an absolute prohibition on releasing a SAR. Therefore, no
consideration of the request was necessary. The United States,
through the Department of Justice's ("DOJ's") Statement of
Interest, echoes the OCC's position.

**C. Analysis of the OCC's Decision**

The Court recognizes that the Bank Secrecy Act, the OCC's
regulations, and case law establish an absolute prohibition on
financial institutions from disclosing to third parties
information about the filing of a SAR. Thus, plaintiff is

8

prohibited from asking Union Planters National Bank about any SARs it may have filed. However, that is not the issue before the Court. The Court is asked to determine whether an administrative request for information made to the OCC was properly considered by the agency. The OCC's position, that it does not have to consider plaintiff's request individually because the OCC itself is absolutely prohibited from revealing information about the filing of a SAR to third parties, is not supported by the Bank Secrecy Act or by its own regulations. The few cases that concern requests to the federal treasury agencies, rather than financial institutions, support the conclusion that the OCC has the authority to release a SAR. *But see*, *Wuliger v. OCC*, 2005 WL 2587237 (N.D. Ohio 2005), *discussed infra*.

### 1.   OCC Regulations

The OCC denial letter, which constitutes the record of administrative decision-making for purposes of this action, first refers the applicant to the OCC's regulations.  The denial letter acknowledges that plaintiff's request was made pursuant to 12 C.F.R. § 4.31 *et seq*. The denial letter then cites 12 C.F.R. § 21.11(k) in support of the proposition that "a SAR is confidential." Pl.'s MSJ Ex. B.

The detailed regulatory provisions found at 12 C.F.R. § 4.31

*et seq.*, sketched briefly *supra*, present a coherent framework for requesting a SAR from the OCC. A plain reading of the regulations would lead anyone to the conclusion reached by plaintiff that a request that complied with these provisions would be considered by the OCC. Even 12 C.F.R. § 21.11(k), the OCC's confidentiality regulation, prohibits any "national bank or person" from revealing information about a SAR, and requires anyone of whom such a request is made to "notify the OCC." It is odd to consider this confidentiality provision as applying to the OCC itself.

Rather, section 21.11(k) fits neatly into the regulatory scheme directing all requests for SARs to the OCC and away from the financial institutions themselves. To interpret section 21.11(k) as an absolute prohibition on the OCC itself, not only renders section 21.11(k) somewhat contradictory, it makes the detailed process outlined in section 4.31 *et seq.* a nullity. Of course, it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249 (1985); *Miller v. Medical Center of Southwest Louisiana*, 22 F.3d 626, 629 (5th Cir. 1994).

The OCC regulations indicate that a request for a SAR must be made to the OCC and that banks are prohibited from revealing

information about SARs. The denial letter's citation to the regulations to support the proposition that "a SAR is confidential" is completely non-responsive to plaintiff's request. Plaintiff is apparently aware that a SAR is confidential. That is, presumably, why plaintiff followed the regulations in its detailed request to the OCC.

An agency's interpretation of its own unambiguous regulations is "'entitled to respect'...only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)); *Moore v Hannon Food Service, Inc.*, 317 F.3d 489 (5th Cir. 2003). Because SARs are unambiguously incorporated in the provisions allowing requests for non-public OCC information, the Court finds the OCC's interpretation that those regulations create an absolute prohibition on SAR disclosure by the OCC itself to be unpersuasive.

### 2.   The Bank Secrecy Act

The OCC denial letter next cites the statutory provision at 31 U.S.C. section 5318 as the basis for the confidentiality regulation. This, too, is completely non-responsive to plaintiff's request. The OCC, the DOJ, and numerous court

decisions have spent much energy explaining why the OCC's
regulations are a reasonable interpretation of the statute and
should receive deference under *Chevron U.S.A., Inc. v. Natural
Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The
validity of the regulations, however, is not at issue in this
case, and the Court makes no determinations regarding their
validity. The issue before the Court is whether the OCC complied
with those regulations in denying plaintiff's request. As noted
above, the OCC's own regulations specify the factors that should
be considered when a request for non-public information is
received. The contention that the regulations are a valid
implementation of the statute does nothing to bolster decision-
making that fails to follow those very regulations.

Another statutory provision on which the OCC relies is the
"safe harbor provision" of 31 U.S.C. § 5318(g)(3)(A), which
states as follows:

> Any financial institution that makes a voluntary
> disclosure of an possible violation of law or
> regulation to a government agency ...shall not be
> liable to any person...for such disclosure or for any
> failure to provide notice of such disclosure to the
> person who is the subject of such disclosure or any
> other person identified in the disclosure.

The OCC contends that this provision forecloses disclosure to
plaintiff because plaintiff would use the disclosure to prove

12

liability in its civil case. Def.'s Opp. Memo. at 6. However, plaintiff is not seeking to impose liability on Union Planters Bank for filing a SAR or for failing to notify any party mentioned in a SAR. The filing of a SAR is clearly not what plaintiff complains of in its State Court suit. Although plaintiff seeks information about a SAR to prove liability or to impeach, the filing of a SAR is not the basis for liability. The safe harbor provision is not implicated by plaintiff's administrative request.

### 3.  Case law

Following reference to the regulations and the statute, the denial letter lists five cases as support for the proposition that "numerous courts have refused to order the production of a SAR in discovery." Pl.'s MSJ Ex. B. Once again, the OCC's blanket statement is completely non-responsive to plaintiff's request. Plaintiff has not sought production of a SAR in discovery. The regulations and cases clearly prohibit this route. Instead it has sought information through the administrative request procedure dictated by OCC regulations.

### a. Discovery Request Cases

Four of the five cases cited in the denial letter deal with discovery requests or motions seeking a SAR from financial

institutions. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999)( financial institutions are prohibited from disclosing SAR "unless ordered to do so by the appropriate authorities"); *Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678 (S.D. Tex. 2004) (granting bank parties protection from discovery requests seeking information about the filing of SAR); *Nieman v. Firstar Bank*, 2005 WL 234 6998 (N.D. Ia. 2004) (safe harbor provision grants banks immunity from claims based on filing a SAR); and *Bank of China v. St. Paul Mercury Ins. Co.*, 2004 U.S. Dist. LEXIS 233464 (S.D.N.Y. Nov. 19, 2004)(denying motion to compel production of SAR "without OCC's prior consent" as provided by 12 C.F.R. § 4.32).

Although these cases do support the OCC's contention in the denial letter that courts have refused to order the production of SARs in discovery, plaintiff is correct that this is an unreasonable basis for denying plaintiff's administrative request. In fact, as noted in the parentheticals above, two of these cases recognize that the "appropriate authorities" can disclose a SAR.

### b. Administrative Request Cases

The one case in the denial letter that addresses an administrative request such as plaintiff's is *U.S. v. Bortnick*,

2005 WL 300071 (E.D. Pa. 2005). *Bortnick* is a one paragraph order, with a one paragraph footnote. The order rules on the merits of the criminal defendant's motion to compel the OCC to produce SARs. The court finds that the defendant "has not made the showing required by 12 C.F.R. § 4.33 that his need for the information outweighs the substantial public interest in maintaining the confidentiality of [SARs]" and that "other evidence reasonably suited to his defense is not available from any other source." *Id.* at 1. The footnote indicates that the bank filing a SAR is prohibited by 12 C.F.R. § 21.11(k) from producing it.

Clearly, reference to a terse opinion in which a previous requester failed to meet the requirements of 12 C.F.R. § 4.33 does not address plaintiff's own request. Indeed, the case supports plaintiff's understanding that the procedure outlined in 12 C.F.R. § 4.31 *et seq.* is the proper course for obtaining a SAR.

Of all the cases cited to the Court in memoranda relating to the motions before it, only two other cases concern requests to agencies for disclosure of a SAR. In the first, *Federal Deposit Insurance Corp. v. Flagship Auto Center, Inc.*, 2005 WL 1140678 (N.D. Ohio 2005), the court refused to compel the Federal Reserve

15

Board to produce a SAR in response to a discovery request because "[p]ersons seeking such confidential supervisory information must file a written request with the Board's general counsel showing that the need for confidential information outweighs the need to maintain confidentiality and that disclosure is consistent with the supervisory or regulatory policies of the Board," and the defendants "failed to demonstrate that they made an administrative request to the Board for the documents." *Id.* at 5-6. As with *Bortnick*, this case supports plaintiff's understanding that the regulations make SARs available through administrative request.

The final case offered by defendant is the recently decided *Wuliger v. Office of the Comptroller of the Currency*, 2005 WL 2687237 (N.D. Ohio 2005). Counsel for the OCC and the DOJ relied heavily on *Wuliger* at oral arguments because it is directly on point with the case before the Court.  However, the Court finds *Wuliger's* analysis unconvincing.

*Wuliger* upholds the OCC's denial of an administrative request for a SAR because it finds that 12 U.S.C. section 21.11(k) is a valid implementation of the Bank Secrecy Act. "[T]his court finds § 21.11(k) to be consistent with the authorizing legislation under 31 U.S.C. § 5318(g)(2) and a

reasonable implementation of the statutory provision regarding reporting and disclosure of SARs." *Id.* at 8.[2] As noted above, plaintiff is not challenging the validity of the regulation, but is seeking to have the OCC comply with those regulations. The finding of validity is all but irrelevant in this context.

In support of the confidentiality of SARs, *Wuliger* cites eight cases, all of which deal with discovery requests made to banks*,* not administrative requests made to agencies. Plaintiff in this case has not made a discovery request to the bank, so these cases, like the finding of validity, have little relevance. As noted above, the cases dealing with requests to agencies do not support defendant's argument that the OCC itself is absolutely prohibited from disclosing a SAR.

In sum, *Wuliger* makes an unwarranted leap from a finding that the regulations are reasonable and SARs are confidential to the conclusion that an administrative request should be denied without weighing the competing interests, just as a discovery request would be. No analysis is offered to support that leap. The Court disagrees with *Wuliger's* conclusion.

---

[2] *Wuliger* also finds that the portions of the Bank Secrecy Act dealing with the prohibition on disclosure of reports does not violate the separation of powers doctrine and is not unlawfully retroactive. *Wuliger v. OCC*, 2005 WL 2587237, 8-10 (N.D. Ohio 2005).

**4. OCC Interpretive Letter No. 978**

The last reference in the denial letter is to OCC Interpretive Letter No. 978. Interpretive Letter No. 978 gives the same run-down of regulation and statute as in the denial letter. It also cites several cases regarding the confidentiality of SARs, each of which deal with discovery requests to banks. Interpretive Letter No. 978 goes a little further than the denial letter by providing several policy reasons for the confidentiality of SARs. Counsel for defendant and the DOJ advanced these policy reasons in their briefs as support for an absolute prohibition on SAR disclosure. However, under the OCC regulations at 12 C.F.R. § 4.31, *et seq.*, it is incumbent upon the OCC to weigh these policy concerns against the interest represented in the application of one requesting non-public information. A blanket reference to the policies, as policies, is non-responsive to plaintiff's individual application.

Interpretive Letter No. 978 opines that "the willingness of banks to make these filings will be diminished if SARs are made freely available." However, the point of the administrative request as the sole means of disclosure, rather than normal discovery methods, is that SARs will not be "freely available." They will only be available when the relevance and need of the

18

requester outweighs the public interest in confidentiality and the burden of production on the OCC. *See*, 12 C.F.R. § 4.33.

The policy reasons supporting the public interest in confidentiality have been well-documented by the cases discussing the confidentiality provisions. These reasons were raised before the Court in this case as well. However, the record before the Court indicates that none of the reasons cited by the OCC in its letters or by the cases cited therein apply to the specific application of plaintiff in this case.

Clearly, granting plaintiff's well-supported request will not make SARs "freely available" to civil litigants or discourage banks from complying with the duties imposed upon them by law. On the other hand, plaintiff points out that an absolute prohibition not contemplated by the Bank Secrecy Act or by OCC regulations might encourage banks to commit fraud on the courts with impunity.

Disclosure of a SAR in a case where the subject of the report has already been convicted will not "compromise an ongoing law enforcement investigation, [or] provide information to a criminal wishing to evade detection." *Whitney Nat. Bank v. Karam*, 306 F. Supp. 2d 678, 680 (S.D.Tex. 2004). Similarly, a properly redacted SAR produced under a protective order would not "reveal

the methods by which banks are able to detect suspicious activity," nor "harm the privacy interests of innocent people whose names may be mentioned." *Id.* at 680-81.

None of the policy reasons generically offered by the OCC actually apply to plaintiff's request. On the other side of the balance, the record demonstrates plaintiff's need for the information and the relevance to its litigation. The State Court defendant has persistently denied under oath that it had any suspicion of illegal activity and none of the State Court defendant's records reveal any suspicion. The central claim against the State Court defendant is misrepresentation; therefore proof that the State Court defendant suspected illegal activity (and did not reveal its suspicions to plaintiff) is crucial. Plaintiff represents that allowing the State Court defendant to take a contradictory position in litigation to that taken with the OCC would effect a miscarriage of justice.

## CONCLUSION

The denial letter failed in all respects to respond to plaintiff's request for disclosure of non-public information because defendant had decided that requests for SARs need not be considered individually. This is contrary to the unambiguous provisions of its own regulations. And the explanation for its

decision was contrary to the record evidence. Therefore
defendant's decision is arbitrary and capricious under the
standard enunciated in *Motor Vehicle Mfrs. Ass'n v. State Farm
Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

When a district court arrives at an issue that an agency has
not yet evaluated, it is appropriate to remand the matter to the
agency for review. *Florida Power and Light Co. v. Lorion*, 470
U.S. 729, 744 (1985). However, when there was no procedural
defect in agency decision-making, i.e., when the agency had a
complete record before it and simply made an unlawful decision,
there is no need to remand. The agency "is not entitled to a
second bite of the apple just because it made a poor decision –
if that were the case, administrative law would be a never ending
loop from which aggrieved parties would never receive justice."
*McDonnell Douglas Corp. v. NASA*, 895 F.Supp. 316, 319 (D.D.C.
1995).

In addition, at oral argument, counsel for the OCC made it
exceedingly clear that under no circumstances would the OCC
release a SAR to a private litigant. Though the regulations
require the OCC to weigh the relevant factors when considering a
request, the OCC has taken the position that the factors are pre-
weighed and that all requests for SARs will be categorically

21

denied. Remand is not necessary where it will prove futile. *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 756 n.7 (1986) (citing *Illinois v. ICC,* 722 F.2d 1341, 1348-49 (7th Cir.1983)); *Florida Dept. of Labor and Employment Sec. v. U.S. Dept. of Labor*, 893 F.2d 1319, 1324 (11th Cir. 1990).  Accordingly,

   **IT IS ORDERED** that defendant's **Motion To Dismiss Or, In The Alternative, For Summary Judgment** (Rec. Doc. 9) is **DENIED** and plaintiff's **Cross-Motion For Summary Judgment** (Rec. Doc. 13) is **GRANTED.**

   **IT IS FURTHER ORDERED** that defendant produce within ten days from the entry of this order, *in camera* to the Court, any SAR responsive to plaintiff's administrative request. Defendant should use its judgment to redact any information that may reveal criminal detection methods or information concerning innocent third parties. The Court will then determine the extent to which disclosure to plaintiff is warranted.

   New Orleans, Louisiana this the 22nd day of November, 2005.


                                   CARL J. BARBIER
                                   UNITED STATES DISTRICT JUDGE